**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FRANCIS CREVATAS, *et al.*,** | : | **CIVIL ACTION NO. 3:15-2307** |
| **Plaintiffs** | : | |
| **v.** | : | **(JUDGE MANNION)** |
| **SMITH MANAGEMENT AND CONSULTING, LLC,** | : | |
| | : | |
| **Defendant** | | |

**M E M O R A N D U M**

Plaintiff Francis Crevatas is an employee of defendant Smith Management and Consulting, LLC, ("Smith"), an oil and gas field services company that provides consultants to clients in Pennsylvania and other areas who perform work on oil and gas rigs. Smith paid its consultants based on a day-rate. Plaintiff was paid a day-rate of $350 for a full day of work for Smith. Plaintiff alleged in this case that he and Smith's other consultants were scheduled for shifts lasting at least 12 hours and that they routinely worked over 40 hours per week. Despite working overtime hours, plaintiff alleged that Smith failed to pay the consultants overtime premium pay. Rather, Smith simply paid the consultants their regular day-rate multiplied by the number of days they worked during a given week. Plaintiff claims that Smith's payment practices have caused him and other day-rate consultants to work overtime hours without compensation in violation of the Fair Labor Standards Act mandates. Plaintiff has sued Smith under the Fair Labor Standards Act and the Pennsylvania Minimum Wage Act, on behalf of himself and other day-rate

consultants. The parties now seek court approval of their settlement.

## I.    BACKGROUND

Plaintiff contends that he and the other day-rate consultants for Smith are owed overtime pay for any hours worked in excess of 40 hours per week, as mandated by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§201, *et seq*., and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§333.101, *et seq*. Plaintiff brought suit against Smith on November 30, 2015, (Doc. 1), bringing a claim for violations of the FLSA's overtime provision, 29 U.S.C. §207(a)(1), and a claim for violations of the PMWA's overtime provision, 43 P.S. §331.104(c). The FLSA claim was brought as a collective action pursuant to 29 U.S.C. §216(b). The PMWA actions was brought as a class action pursuant to Fed.R.Civ.P. 23. Plaintiff filed a motion for an extension of time for the class certification deadline, (Doc. 10), and it was granted by the court and postponed until a later date to be determined. (Doc. 13). The parties later stipulated that all individuals who, during any workweek since November 30, 2012, were paid, in whole or in part, on a daily basis by Smith were conditionally certified as a collective pursuant to 29 U.S.C. §216(b). (Doc. 21). Plaintiff withdrew the Rule 23 class action claim, but the parties acknowledged that plaintiffs who opt into the collective action join the action for both the FLSA and PMWA claims. (Id.). The court approved of the stipulation. (Doc. 22). In addition to the original plaintiff, 27 other day-rate employees opted in to the collective action. As such, there are a total of 28

plaintiffs in this case. (Doc. 35-1 at 15).

On March 1, 2017, plaintiffs filed an unopposed motion for approval of collective action settlement, noting the concurrence of Smith's counsel in the motion, with a copy of the proposed settlement agreement. (Doc. 35, Doc. 35-1). Plaintiffs also filed their brief in support on March 1, 2017. (Doc. 36).

## II.    DISCUSSION

"In 1938, Congress enacted the FLSA to protect covered workers from substandard wages and oppressive working hours." Friedrich v. U.S. Computer Servs., 974 F.2d 409, 412 (3d Cir. 1992) (citing Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981). The Fair Labor Standards Act provides that:

> "Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

29 U.S.C. §207(a)(1). Thus, employers covered by the FLSA must pay overtime compensation to employees who work for more than 40 hours a week "unless one or another of certain exemptions applies." Packard v. Pittsburgh Transp. Cp., 418 F.3d 246, 250 (3d Cir. 2005).

The PMWA, like the FLSA, provides that employees shall receive overtime wages of "not less than one and a half times" their regular wage for

any hours worked after forty in a work week. 43 P.S. §333.104(c). Pennsylvania courts have looked to federal law regarding the FLSA in applying the PMWA. Baum v. Astrazeneca LP, 372 F.App'x 246, 248, n. 4 (3d Cir. 2010) (citing Commonwealth of Pa. Dept. of Labor and Indus., Bureau of Labor Law Compliance v. Stuber, 822 A.2d 870, 873 (Pa.Commw. 2003), aff'd, 859 A.2d 1253 (2004) (applying "federal case law" regarding the FLSA to a PMWA claim). The Pennsylvania courts have determined that "it is proper to give deference to federal interpretation of a federal statute when the state statute substantially parallels it." (Id.).

In their brief, (Doc. 36 at 7), plaintiffs explain as follows:

Under FLSA and PMWA regulations, overtime-eligible day-rate employees are entitled to extra half-time pay for all hours worked over 40 per week. *See* 29 C.F.R. §778.112; 34 Pa. Code §231.43(b). The extra overtime premium pay is calculated through a three-step methodology: (1) all day-rate payments received by an employee during the week are totaled; (2) the total payments are then divided to determine the "regular rate" paid for the week; and (3) for every hour worked over 40, the employee receives an extra overtime premium payment equaling 50% of the regular rate. *See id.*

Plaintiffs move for court approval of their proposed settlement agreement as well as their proposed award of attorneys' fees. Smith has concurred in plaintiffs' motion. The court will now discuss the proposed settlement agreement and the award of attorneys' fees and costs.

"Once employees present a proposed settlement agreement to the district court pursuant to Section 216(b), the Court may enter a stipulated judgment if it determines that the compromise 'is a fair and reasonable

resolution of a bona fide dispute over FLSA provisions.'" Brown v. TrueBlue, Inc., 2013 WL 5408575, \*1 (M.D.Pa. Sept. 25, 2013) (citing Cuttic v. Crozer–Chester Medical Center, 868 F.Supp.2d 464, 466 (E.D.Pa. 2012); *see also* Adams v. Bayview Asset Mgmt., LLC, 11 F.Supp.3d 474, 476 (E.D.Pa. 2014) (court indicated that Department of Labor supervision or court approval are the "only two ways that FLSA claims can be settled or compromised by employees," "[b]ecause of the public interest in FLSA rights").

The Third Circuit has not specifically addressed the factors which the district court should consider when approving FLSA settlements. However, district courts within this Circuit have followed the Eleventh Circuit's decision in Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir.1982). *See* Kraus v. PA Fit II, 155 F.Supp.3d 516, 521 (E.D.Pa. 2016); Brown, 2013 WL 5408575, \*1 (court applied the *Lynn's* Food standard). The court stated in *Lynn's Food*, "[w]hen parties present to the district court a proposed settlement, the district court may enter a stipulated judgment if it determines that the compromise reached 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" Cuttic, 868 F.Supp.2d at 466 (quoting Lynn's Food, 679 F.2d at 1354). A bona fide dispute under the FLSA includes computation of back wages. *See* Lynn's Food, 679 F.2d at 1354. The court finds in the instant case that the proposed settlement agreement resolves a bona fide dispute. *See* Creed v. Benco Dental Supply Co., 2013 WL 5276109, at \*1 (M.D.Pa. Sept. 17, 2013) (court

5

held that a dispute was bona fide if it involves "factual issues rather than legal issues such as the statute's coverage and applicability."). "When determining whether a proposed settlement agreement merits approval, the Court must first consider whether the agreement is fair and reasonable, and then proceed to determine whether it furthers or frustrates the implementation of the FLSA." Brown, 2013 WL 5408575, \*1 (citation omitted). To determine whether an FLSA settlement agreement is fair and reasonable, "district courts have relied on the factors set out by the Third Circuit for approving class action settlements pursuant to Federal Rule of Civil Procedure 23." Brown, 2013 WL 5408575, \*2 (citing Girsh v. Jepson, 521 F.2d 153 (3d Cir. 1975)). The factors specified by the Third Circuit in Girsh, 521 F.2d at 157–58, are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risk of establishing damages; (6) risk of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Plaintiffs state that their proposed settlement agreement is fair and reasonable. It provides that Smith will pay $137,500.00 in total settlement of this action with the 28 plaintiffs receiving a total amount of $92,500.00. Since the specific amount that each plaintiff will receive is detailed in Exhibit A attached to the Settlement Agreement and Release, (Doc. 35-1, p. 15), the court will not repeat the amounts herein. Originating plaintiff Crevatas will

6

receive $2,500.00 as a service award. The settlement agreement also provides that plaintiffs' counsel will receive fees in the amount of $43,124.74 and costs in the amount of $1,875.26 from Smith. (Id., p. 8). The Settlement Agreement contains a Release as well as a "No Press Releases" provision which states that the parties and their counsel will not issue any press releases, contact the press or respond to inquiries from the press regarding this case other than describing what is available in public documents. The Settlement Agreement and Release have been signed by the parties. Once the court approves of the settlement agreement, the case will be dismissed with prejudice.

In their brief in support of their motion, (Doc. 36, at 16-20), plaintiffs address the above stated *Girsh* factors *seriatim* and state: Factor 1, "absent settlement, this litigation would require significant additional discovery concerning plaintiffs' employee status and the determination of plaintiffs' work hours and damages"; Factor 2, all 28 plaintiffs were sent a notice specifying the terms of the settlement, 27 of the plaintiffs did not dispute their respective payout amounts, and one plaintiff thought his amount was too small; Factor 3, "the settlement discussions occurred after Smith provided complete payroll data for each of the plaintiffs allowing plaintiffs' counsel to create a detailed damages model" and "the parties had a clear understanding of the potential unpaid wages that were at issue had this case not resolved"; Factors 4-5, "Smith could continue to argue that plaintiffs were not employees entitled to

overtime premium pay" and that "even if plaintiffs were able to defeat [Smith's] merits defense, they still needed to prove their estimated overtime work hours based on a just and reasonable inference"; Factor 6, this factor weighs in favor of settlement approval since "Smith could argue that a collective trial of this case is inappropriate because determining whether any particular plaintiff is overtime-exempt turns on an individualized inquiry of his specific work location and circumstances"; Factor 7, this factor favors approval of settlement since "plaintiffs' counsel hired its accounting firm to perform an independent review of Smith's internal financial records, this review confirmed Smith's representations throughout the litigation that it was experiencing severe financial difficulties, [and] these difficulties make it unlikely that plaintiffs would be able to collect a larger judgment from Smith if they were fortunate to prevail at trial"; and Factors 8-9, "these factors favor approval because, even after deductions for the proposed attorney's fees/expenses and the service award, plaintiffs' net settlement payouts average $3,214.29 ($90,000.00/ 28), representing approximately 41% of the original unpaid wage calculation which assumes that plaintiffs worked 12 hours each day."

Plaintiffs state that every one of the *Girsh* factors weigh in favor of approval of the settlement agreement and the payments to plaintiffs. Based on the record and the *Girsh* factors, all of which clearly weigh in favor of approval, the court finds that the proposed settlement agreement is fair and reasonable.

8

Next, the court must consider whether the settlement agreement furthers or frustrates the implementation of the FLSA in the workplace. Section 4 of the settlement agreement contains a Release which provides that after defendant meets its payment obligations, plaintiffs release defendant from all legal or equitable claims arising prior to the approval date of the Settlement Agreement and alleging unpaid wages, liquidated damages/penalties, interest, attorneys' fees and costs as well as any other damages available under the FLSA and the PMWA as well as under any other law. Proposed release provisions run contrary to the FLSA if they are overly broad and the parameters of the FLSA claim waiver are unclear. Kraus, 155 F.Supp. 3d at 532. The court finds that the Settlement Agreement furthers the implementation of the FLSA in the workplace. The court also finds that the Release does not frustrate the implementation of the FLSA in the workplace since it is sufficient limited in nature and, its parameters are clear since the release for plaintiffs is limited to wage and hour claims and remains within the scope of this lawsuit. *See* DiClemente v. Adams Outdoor Advertising, Inc., 2016 WL 3654462 (M.D.Pa. July 8, 2016).

Section 6 of the settlement agreement provides that the lead plaintiff Crevatas will receive a service award of $2,500 in addition to his settlement share of $1557.92. Plaintiffs, (Doc. 36, p. 21), state that "[t]his award is in recognition of Crevatas's courage to step forward and publically challenge Smith's compensation practices and seek a recovery on behalf of 27 other

plaintiffs." The court, in its discretion, finds that the service award is appropriate in this employment litigation in light of Crevatas' efforts and risks to obtain payments for 27 other consultants of Smith and, in light of the small size of the service award compared to the total size of the common fund. *See* Sullivan v. DB Investments, Inc., 667 F.3d 273, 333 n.65 (3d Cir. 2011) ("The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws.") (citations & quotations omitted); In re Cendant Corp., 232 F.Supp.2d 327, 344 (D.N.J. 2002) ("Such awards are granted to reward the public service performed by lead plaintiffs in contributing to the vitality and enforcement of [applicable] laws"); Bredbenner v. Liberty Travel, Inc., 2011 WL 1344745, *23 (D.N.J. April 8, 2011) ("Courts have ample authority to award incentive or 'service' payments to particular class members where the individual provided a benefit to the class or incurred risks during the course of litigation [in FLSA collective action]."). Additionally, the general release of claims Crevatas has agreed to is broader than the limited release applicable to the other plaintiffs.

The FLSA also provides that the court "shall, in addition to any judgment awarded to the plaintiff ... allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. §216(b). "Percentage of recovery is the prevailing method used by courts in the Third Circuit for wage

and hour cases." Kraus, 155 F.Supp. 3d at 533 (citation omitted); DiClemente,

2016 WL 3654462, *4. "The percentage-of-recovery method awards a fixed

portion of the settlement fund to counsel." Kraus, 155 F.Supp. 3d at 533

(citation omitted). "Courts have approved attorneys' fees in FLSA [collective

and class action] settlement agreements 'from roughly 20-45%' of the

settlement fund." Id. at 534. (citation omitted). The factors which the court

considers under the percentage-of-recovery method to evaluate the award of

attorneys' fees in common fund cases are:

> (1) the size of the fund created and the number of persons
> benefitted; (2) the presence or absence of substantial objections
> by members of the class to the settlement terms and/or fees
> requested by counsel; (3) the skill and efficiency of the attorneys
> involved; (4) the complexity and duration of the litigation; (5) the
> risk of nonpayment; (6) the amount of time devoted to the case by
> plaintiffs' counsel; and (7) the awards in similar cases.

Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n. 1 (3d Cir. 2000)

(citations omitted). These factors do not have to be "applied in a formulaic

way" and, "[e]ach case is different, and in certain cases, one factor may

outweigh the rest." Id.

In this case, plaintiffs' costs total $1,875.26, and the attorneys' fee

sought totals $43,124.74 which amounts to 31.36% of the total settlement

amount from which plaintiffs will receive of $92,500, (inclusive of Crevatas'

service award.) Attached to plaintiffs' motion, are the Declarations of R.

Andrew Santillo, Esq., (Doc. 35-2), and Don J. Foty, Esq., (Doc. 35-3), who

are personally familiar with the involvement of their law firms' respective

representation of plaintiffs in this case, namely, Winebrake & Santillo, LLC

("W&S") and Kennedy Hodges, LLP ("KH"). Santillo avers that "W&S has spent 91.7 hours [in this litigation] and incurred a total fee lodestar of $34,003.00 when using the hourly rates described in the fee schedule developed by Philadelphia Community Legal Services ("CLS")" which is used in seeking attorney's fees in statutory fee-shifting. He then specifies the hours worked on this case by each member of W&S and their fee based on their hourly rate. Santillo also states that "W&S incurred a total of $1,822.56 in costs and expenses in connection with this litigation."(Doc. 35-2, at 7-8). Foty avers that KH has spent 13.32 hours in this litigation and incurred a total fee lodestar of $3,437.00 when using the hourly rates described in the fee schedule developed by CLS. Foty also specifies the hours worked on this case by each member of KH and their fee based on their hourly rate. Foty further states that KH incurred a total of $52.70 in costs and expenses in connection with this case provides details for this amount.(Doc. 35-3, at 3-4).

Based on its review of Santillo's and Foty's Declarations and the *Gunter* factors, all of which weigh in favor of approving the proposed award, the court in its discretion shall approve the requested attorneys' fees of $43,124.74 and $1,875.26 in costs as provided in the settlement agreement.

## III.    CONCLUSION

For the above reasons, plaintiffs' unopposed motion for approval of collective action settlement, (Doc. 35), is **GRANTED**. A separate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: March 22, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-2307-01.wpd